## FIRST NAT. BANK OF DUNCAN, OKL., v. STALEY et al.

(Circuit Court of Appeals, Fifth Circuit. February 5, 1925.)

No. 4233.

**1. Husband and wife ⬤⟞138(2)—Evidence of transactions with parties other than plaintiff held insufficient to establish course of dealing estopping wife from denying husband's authority.**

In action involving husband's authority to deal for wife, evidence of transactions with banks other than plaintiff *held* insufficient to show course of dealing relied on by plaintiff, or to estop wife from denying husband's authority.

**2. Banks and banking ⬤⟞67—Bank, consolidating with another and acquiring notes from it, does not take as innocent purchaser.**

Bank, consolidating with another and acquiring from it notes, does not take as innocent purchaser, but steps into shoes of bank with which it consolidates.

**3. Husband and wife ⬤⟞138(2)—Bank, accepting husband's pledge of wife's notes with knowledge that husband had indorsed them in wife's name, held not innocent holder.**

Where bank, at time of accepting husband's pledge of notes belonging to wife, knew that husband had signed wife's name to indorsement, it was not an innocent holder, but chargeable with burden of proving that wife had consented or authorized husband's act.

**4. Husband and wife ⬤⟞138(8)—Wife held not precluded from asserting ownership of notes pledged by her husband.**

Where bank, accepting husband's pledge of wife's notes, knew that her indorsement thereon had been written by husband, *held*, mere fact that wife, after learning of facts, permitted

bank to retain possession for short time before insolvency of husband, was insufficient to preclude her from subsequently asserting ownership.

Appeal from the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Action by the First National Bank of Duncan, Okl., against C. R. Staley and others. From a judgment rendered, denying plaintiff part of relief sought, it appeals. Affirmed.

Tarlton Morrow and Harry C. Weeks, both of Wichita Falls, Tex. (Weeks, Morrow & Francis, of Wichita Falls, Tex., on the brief), for appellant.

J. Shirley Cook, of Vernon, Tex., for appellees.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. Plaintiff sued C. R. Staley and his wife, Mrs. Fleta Staley, and Mrs. Eva E. Whatley, upon a series of notes as follows: One for $1,300, dated December 9, 1919, executed by Staley and his said wife in favor of one Frank Mann, secured by vendor's lien upon certain real property in the city of Vernon, Wilbarger county, Tex., which had been acquired by plaintiff; and, second, upon a demand note in the principal sum of $7,452.52, dated June 10, 1921, signed by C. R. Staley alone, and secured by collateral, consisting of two additional mortgage notes resting upon the same property, each for the sum of $4,350, dated October 1, 1920, and maturing one and two years after date, signed by Mrs. Whatley, and which two last-mentioned mortgage notes were payable to the said Mrs. Fleta Staley. These latter notes, for $4,350 each, bear the following indorsement on the backs thereof:

"For value received I hereby transfer and assign unto the Duncan National Bank of Duncan, Oklahoma, the within note, together with vendor's lien on the property securing same, and as indorser I guarantee payment of the within note at maturity, or on demand at any time after maturity, and waive demand, notice of protest, and nonpayment thereof. Mrs. Fleta Staley."

Plaintiff hence prayed for judgment against the defendant C. R. Staley and wife as the makers of the $1,300 note, against C. R. Staley upon the one for $7,452.52, and against Mrs. Fleta Staley as indorser, and Mrs. Eva Whatley as maker, respectively, of the two mortgage notes, with recognition of the mortgage lien and privilege as therein set forth.

Plaintiff further alleged that the two notes last mentioned were transferred to it as such collateral by the said Mrs. Staley, through her husband, C. R. Staley; that all of said notes were originally held by the Duncan National Bank of Duncan, Okl., but that it, the plaintiff, had acquired the same before maturity, in due course, through said bank; and, by way of anticipating the defense, plaintiff further alleged that the said Mrs. Staley was claiming that the property sold to Mrs. Whatley, and securing the said mortgage notes of $4,350 each, was her separate property, and that the notes therefor belonged to her; that plaintiff denied this claim, and alleged that said property belonged to the community existing between Mr. and Mrs. Staley; that, if mistaken in this connection, and it should be shown that Mrs. Staley had owned any separate property, the same had been so mixed and commingled with the community property that it would be impossible to identify it; further, that, if found to be her separate property, she had authorized and empowered her said husband to transfer it to plaintiff; and, again in the alternative, if she had not so expressly authorized the transfer, that she had afterwards approved and ratified the same, and for many months after having knowledge thereof failed and refused to notify plaintiff of any claim to the said notes; that, if said notice had been given promptly, the plaintiff or its transferror, the Duncan National Bank, could have collected their debt out of the said C. R. Staley, but that the said wife had waited until her husband had become insolvent; and that she was therefore legally and equitably estopped to now claim the notes as her property.

Defendant C. R. Staley, his wife, Mrs. Fleta Staley, and Mrs. Eva E. Whatley, a sister of Mrs. Staley, all joined in the same answer. They admitted that the note for $1,300 was a valid obligation, but claimed the ownership of the two mortgage notes for $4,350 each was in Mrs. Staley, and otherwise denied all of the allegations of authorization, ratification, estoppel, etc. Both Mrs. Staley and her husband expressly denied under oath that she either executed the indorsement or authorized her husband to do so, or that she has in any way ratified or approved the same, or received any consideration therefor; that defendant C. R. Staley, without the knowledge or consent of his wife, signed her name to the indorsement, with the understanding had with the Duncan National

Bank that the notes were to be used only for a few days, when they would be returned to him; otherwise, Staley admitted the debt. They denied that any legal demand upon the $1,300 note had been made, or that any attorney's fees were due thereon, and averred a tender of principal and interest. Respondents prayed that the plaintiff's demand be rejected, and that Mrs. Fleta Staley have judgment declaring her the owner of the mortgage notes of $4,350 each, with costs, etc.

The lower court gave judgment in favor of plaintiff upon the principal note of $7,452.52, with interest and costs, against C. R. Staley, and upon the note for $1,300, interest, etc., against Staley and his wife, recognized the lien and mortgage, and ordered same foreclosed. It denied any relief in favor of plaintiff upon the two mortgage notes executed by Mrs. Whatley to Mrs. Staley, decreed that the latter be credited with the sum of $5,561.62 as of October 1, 1921, and with $2,389 as of April 20, 1922, and that the defendant Mrs. Staley have and recover of the plaintiff said notes. Plaintiff appeals.

The assignments of error are as follows: That the court below erred (1) in holding that C. R. Staley was not authorized by his wife to transfer said notes to the Duncan National Bank of Duncan, Okl.; (2) in holding that the wife was not authorized to pledge her separate property for her husband's debts; (3) in not holding that Mrs. Staley, having learned of the pledging of her notes long before the claim in this suit was made, she had ratified the same by her silence and acquiescence for the purpose of avoiding a criminal prosecution of her said husband; (4) in not holding that she was estopped; (5) in not holding, as against appellant, that there were no payments made on said notes; and (6) in not holding that the husband was authorized to make the transfer, because he had at all times transacted and controlled the business of the wife with her consent.

The evidence seems to be undisputed that, when C. R. Staley offered the two mortgage notes to the Duncan National Bank, he signed the transfer and guaranty thereon, "Mrs. Fleta Staley by C. R. Staley," and within less than an hour thereafter rubbed out the words "by C. R. Staley." He and C. D. Green, who was also present at the time of this transaction, testified that Russell, representing the bank, saw and knew that this was done, and perhaps suggested it, and that it was understood with the latter on the part of the bank that the notes would only be used for a few days. It also appears that he had some interest in the oil operations of Staley, and this, no doubt, accounts for his willingness to take the notes under those circumstances. Both Mrs. Staley and her husband testified that, not only did she not authorize the use of her notes, but that she knew nothing about it until long after they had been pledged and the loan made.

[1, 2] A number of transactions and deals with other banks by Staley with the property and funds of his wife, particularly in keeping accounts in her name, making and withdrawing deposits, etc., are shown, in order to establish a system of dealing by which she had intrusted her affairs to her husband. However, these were not transactions with the plaintiff bank, or with the Duncan National Bank, with which it was consolidated; hence such matters could neither have been relied upon by the said bank in making the loan, nor could they reasonably operate as estoppel, for the reason that the bank was not led to change its position as a result thereof. The loan and purported pledge was made on June 10, 1921, the consolidation of the two banks took place on July 27, 1921, and the first knowledge that Mrs. Staley had of the pledge, according to the only testimony in the record on the subject, must have been some time thereafter, probably in the fall. By the terms of the consolidation, as well as legally, the First National Bank stepped into the shoes of the Duncan National Bank, and it therefore does not occupy the position of an innocent third person in the sense of the commercial law. 7 R. C. pp. 174–181, verbo "Corporations," §§ 149 and 155.

According to the record it is undisputed that Mrs. Staley owned certain property in New Mexico, given her by her father, which she traded for 15 shares of stock in the Burke-Waggoner Oil Association. This, together with one other share that she acquired in a trade of her automobile, after the striking of oil, was sold at a profit of 2,000 per cent., or $32,000. It was from this source that she received the money that was invested in the property which was later sold to her sister, the purchase price of which was represented by the two mortgage notes in controversy here.

[3] Under this showing the notes were her separate property, and in view of the further fact that they were payable to her and unindorsed, the Duncan National Bank, through its representative, Russell, was put

upon notice that she had not put them in negotiable form, when Staley, in the former's presence, placed the indorsement on the back thereof, not only purporting to transfer them, but attempting to bind her personally by guaranteeing their payment. In these circumstances, it (the bank) cannot be said to have been an innocent holder, but carries the burden of proving, as against Mrs. Staley, that she gave her consent or authorized the act of her husband. 21 C. J. p. 1250, verbo "Estoppel," § 267, and authorities in footnotes.

[4] Otherwise it was necessary that plaintiff show some conduct on the part of the wife by which, after full knowledge of the facts, she permitted the bank to change its position to its disadvantage. This was in a way attempted by showing that C. R. Staley was perhaps still solvent (he having subsequently gone into bankruptcy) when she learned of the pledge; but, granting that this was true, we think the circumstances under which the bank acquired the paper were such as to put it upon inquiry, and to impose the duty of ascertaining the existence of Staley's authority, especially since the principal note, for the security of which the mortgage notes were pledged, was payable on demand, and it could readily have exacted payment of the debt if the transfer had been found unauthorized. 21 C. J. p. 1131, verbo "Estoppel," §§ 131 and 132, and authorities in footnotes.

Our conclusion is that the notes in controversy in this case were and are the separate property of Mrs. Fleta Staley; that she did not authorize their pledge to the plaintiff bank, nor has she since done or committed any act which precludes her from now asserting the ownership.

For the reasons assigned, the judgment appealed from is affirmed.